*In re* RICHARD C. (The People of the State of Illinois, Petitioner-Appellee, v. Richard C., Respondent-Appellant).

Second District   No. 2—01—1195

Opinion filed May 13, 2002.

Teresa L. Berge and William J. Convoy, Jr., both of Guardianship & Advocacy Commission, of Rockford, and Jeffery M. Plesko, of Guardianship & Advocacy Commission, of Chicago, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz and Diane L.

Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Respondent, Richard C., appeals the trial court's order finding him to be a person subject to the involuntary administration of psychotropic medication. We reverse.

On October 2, 2001, the State filed a petition naming respondent and seeking the authorization for the involuntary administration of the psychotropic medication haloperidol decanoate IM (Haldol) to him.

On October 2, 2001, a notice of hearing was prepared, and the record shows that the notice of hearing was served upon respondent on October 3, 2001. The return of service is signed by the Winnebago County sheriff and a deputy.

At the hearing on the petition, counsel for respondent moved to dismiss the petition on the basis that there was no proof that the petition was served on respondent. The clerk, present in the courtroom, explained that in medication hearings the respondent is served with a copy of the petition along with the notice of the hearing. The trial court then denied the motion to dismiss.

Howard Paul, M.D., testified that he was respondent's attending psychiatrist. Dr. Paul testified that respondent suffered from paranoid schizophrenia. Dr. Paul decided early in his treatment of respondent to switch medication from prolixin decanoate to a drug that would have fewer side effects, would be safer for respondent's heart condition, and would help respondent gain weight. Dr. Paul wanted respondent to take a low dose of Haldol and have his heart monitored so that respondent could take in some nutrition and gain some strength.

Dr. Paul stated that he repeatedly tried to explain the benefits and side effects of Haldol to respondent. But respondent launched into paranoid tirades and said that drugs were poison. Dr. Paul stated at trial that the drug respondent was receiving previously was essentially poisoning respondent. Dr. Paul did not provide respondent with a written statement of the side effects of Haldol. Dr. Paul stated that he would give respondent the side effects in writing after the State obtained a court order to administer the medication.

At the close of the State's case, respondent's counsel moved for a directed finding. The trial court denied the motion, and at the close of the hearing, on October 18, 2001, the court granted the State's petition, ordering that respondent be administered the psychotropic medication Haldol at a range of 12.5 to 100 milligrams a month for a period up to 90 days. Respondent filed this timely appeal.

■ Initially, we determine that, contrary to the State's assertion,

this case is not moot, even though the time to administer the medication provided in the order has passed. When a challenged action is of short duration and is " 'capable of repetition, yet evading review,' " it may be reviewed on the merits, even if otherwise moot, if (1) the duration of the challenged action is too short to be fully litigated prior to its cessation; and (2) there is a reasonable expectation that respondent would be subjected to the same action again. *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). Both criteria are met here. Psychotropic medication cannot be administered involuntarily for more than 90 days without an additional hearing. 405 ILCS 5/2—107.1(a)(5) (West 1998). This period of time is too brief to permit appellate review. To apply the mootness doctrine under such circumstances would effectively deprive those subject to the involuntary administration of psychotropic medication of the right to appeal as provided by the Mental Health and Developmental Disabilities Code. 405 ILCS 5/3—816(b) (West 1998).

The second requirement to apply the exception to the mootness doctrine is also present. The record indicates the respondent was prescribed psychotropic medications in the past and is likely to be prescribed these medications in the future. Respondent's refusal to take the medication may result in severe weight loss. Given this history, it is reasonable to expect that respondent would be subjected to the same action again. Therefore, we will address the issue on the merits. See *In re Cynthia S.*, 326 Ill. App. 3d 65, 67 (2001).

■ On appeal, respondent first maintains that the trial court erred by denying his motion to dismiss, arguing that the State could not prove that it served respondent with the petition. Although the return of service indicates that only the notice of hearing was served upon respondent, a clerk informed the court that it was the county's practice to serve the petition along with the notice of hearing. This statement was sufficient, if believed by the court, to infer that respondent was properly served. There was no affirmative statement by respondent to rebut this reasonable inference. Although the better practice would be to have the sheriff be more specific about what was served, the trial court did not err by denying respondent's motion to dismiss for lack of service.

The case cited by respondent, *In re Delong*, 289 Ill. App. 3d 842 (1997), is distinguishable from this case because in *Delong* there was no evidence that the respondent was served. Here, however, a clerk stated that the standard practice was to serve the petition along with the notice of hearing, and there was nothing affirmative to refute this. Thus, *Delong* does not apply.

■ Respondent also argues that the order must be reversed because

it fails to state who is to administer the medication. Although respondent failed to raise this issue in the trial court, it affects a substantial right and, therefore, we will address it as plain error. See 134 Ill. 2d R. 615(a); *Cynthia S.*, 326 Ill. App. 3d at 67-68.

■ Section 2—107.1(a) of the Mental Health and Developmental Disabilities Code (Code) provides, "[a]n order issued under this subsection (a) shall designate the persons authorized to administer the authorized involuntary treatment." 405 ILCS 5/2—107.1(a)(6) (West 1998). This court held in *Cynthia S.*, 326 Ill. App. 3d at 69, that the failure to name specific individuals who were authorized to administer the medication warranted reversal. In this case, the order provided in pertinent part:

"It is hereby order [*sic*] the patient is to receive haloperidol decanoate IM of 12.5—100 mg/monthly with EKG as needed to monitor respondent's cardiac state, CBC and differential blood testing yearly and blood chemistries yearly."

Here, it is uncontroverted that the order fails to specify who is authorized to administer psychotropic medication to respondent. Rather, the order authorizes virtually anyone to administer the psychotropic drugs, regardless of that person's involvement with or knowledge of respondent's case. The order does not comply with the Code and must be reversed. Nevertheless, a remand is not necessary, since the administration of the medication has been terminated according to the terms of the trial court's order. A new petition and hearing must proceed if the State, or respondent's physician, seeks to administer additional psychotropic medication to respondent against his or her will. *Cynthia S.*, 326 Ill. App. 3d at 69.

Respondent also argues that the trial court erred in granting the State's petition because the State failed to prove by clear and convincing evidence that respondent lacked the capacity to make a reasoned decision about the proposed treatment. We agree with respondent.

■ When reviewing the sufficiency of this evidence, we will reverse the trial court's order if it is against the manifest weight of the evidence. *In re Cathy M.*, 326 Ill. App. 3d 335, 341 (2001). A judgment is against the manifest weight of the evidence when the opposite conclusion is clearly evident, plain, and indisputable. *Cathy M.*, 326 Ill. App. 3d at 341. The Code provides, in part, that the State must prove the following by clear and convincing evidence:

"(E) That the recipient lacks the capacity to make a reasoned decision about the treatment." 405 ILCS 5/2—107.1(a)(4)(E) (West 1998).

The Code also requires:

"If the services include the administration of authorized involun-

tary treatment, the physician shall advise the recipient, in writing, of the side effects and risks of the treatment and alternatives to the proposed treatment, and the risks and benefits thereof, to the extent such advice is consistent with the nature and frequency of the side effects and the recipient's ability to understand the information communicated." 405 ILCS 5/2—102(a—5) (West 1998).

■ In this case, although Dr. Paul may have explained the benefits and side effects of Haldol to respondent, he did not provide respondent with information in writing and could not say that respondent was provided the information in writing by anyone else. We recognize that, although respondent told Dr. Paul that he would not take the medication because it was "poison," this does not mean that respondent was not entitled to be informed in writing. Contrary to the State's contention, this right of written notification is not subject to a harmless error analysis. See *Cathy M.*, 326 Ill. App. 3d at 342-43. As we previously explained:

"The rights provided in the statute were not placed in the Code to insure that a respondent understands a medication's side effects. Rather, these statutory rights insure that a respondent's due process rights are met and protected." *Cathy M.*, 326 Ill. App. 3d at 343.

We also recognize that, unlike the respondent in *Cathy M.*, the respondent here was informed verbally of the benefits and side effects. However, that is not sufficient to insure a respondent's due process rights. If we were to hold that a respondent need not be given written notice of the side effects and benefits of the proposed medication, then the statutory requirement would have no meaning. As we stated in *Cynthia S.*:

"In mental health cases, strict compliance with statutory provisions is compelling, as liberty interests are involved. The Code's procedural safeguards are not mere technicalities, but essential tools to safeguard liberty interests of mental health patients. [Citation.] Thus, procedural safeguards are construed strictly in favor of the respondent. [Citation.] The failure to comply with procedural rules requires the reversal of court orders authorizing involuntary treatment." *Cynthia S.*, 326 Ill. App. 3d at 69.

The fact that respondent told Dr. Paul that he did not want to take the medication and that it was poison made the requirement of written notice of greater value and importance. It would have provided respondent with the opportunity to review the information at a time and in a manner of his choosing. Only then could it be determined whether respondent possessed or lacked the capacity to make a reasoned decision about the treatment. Further, the written information would have helped respondent's counsel assist him so that re-

spondent would not have had to rely on his ability to listen, comprehend, memorize, and then repeat the doctor's words to respondent's counsel. Accordingly, we determine that the trial court erred by ordering respondent to be subjected to the involuntary administration of medication.

The State claims that *In re Barry B.*, 295 Ill. App. 3d 1080 (1998), controls the resolution of this issue. In *Barry B.*, this court affirmed a trial court's order subjecting a respondent to the involuntary administration of psychotropic medication despite the fact that the respondent was not given written information about the prescribed psychotropic medication. *Barry B.*, 295 Ill. App. 3d at 1087. However, in *Barry B.*, the evidence of the respondent's inability to understand the risks and benefits or the medication was overwhelming. Such overwhelming evidence is lacking in this case. Here, there was only Dr. Paul's statement that respondent's paranoia interfered with the discussions about the medication. However, this does not mean that respondent could have neither understood nor utilized the information provided in writing. Thus, *Barry B.* is not controlling.

The judgment of the circuit court of Winnebago County is reversed.

Reversed.

O'MALLEY and BYRNE, JJ., concur.